Let's get started. I just want to say, as a fellow Mississippian, you may wonder why you are in Houston rather than in New Orleans, but you also may notice that another Mississippi case was heard this week in Lubbock, so things could be, I don't want to say worse, but could have been harder for you to get. So welcome to Houston. Hopefully this case will be a little bit lighter fare than the case that was argued earlier in Texas. May not make the front page. May not make the front page. The way it deserves to be. Please, the Court. Vic Welsh for the appellant, Emerald Coast Finest Produce Company. The District Court decided the case against Bancorp South and Altera based on the finding of an absence of a legal duty owed to my client. The District Court found an absence of a legal duty on the basis of the Court's reasoning that a legal duty would arise from contract and not arise from an undertaking. As a result of the Court's ruling, my client was left with an approximately $5 million uninsured fire loss to their 126,500 square foot warehouse. As part of our lease agreement with our lessee, Sunrise, Sunrise was obligated to purchase 100% replacement cost value insurance coverage on the building. Bancorp South was a procuring agent having a 20-year relationship with Sunrise. Altera was the insuring company because the property was going to be added to an existing policy. And that is significant because both Bancorp South and Altera acted with full knowledge that the insurance was going to be purchased for the benefit of Emerald Coast. And we know that and that is not disputed because in the record, at page 1949, there's an endorsement number four to the Altera policy where Emerald Coast was added to the policy as a mortgagee. And under the terms of the existing policy, at page 1918 of the record, there's a mortgagee payment clause which clearly indicates that the insurance proceeds in the event of a loss would be paid to the mortgagee. So there's no question that the insurance was being procured for our benefit. Emerald Coast and Bancorp South also acted with full knowledge that 100% replacement cost value insurance was being requested and required. After the fire, there was a report prepared at the request of Altera that showed that the actual replacement cost value of the property was $15 million. Instead of that number, Bancorp South and Altera, based upon a limited investigation, recommended, procured, and placed only $5 million of insurance coverage. What about the case that says if you hadn't noticed, if you had a copy of the policy or information of what the policy limits were that you can't rely on? The Maladenao case in Mississippi. Yes. Here's what that case says, Your Honor. That case says if the insured, or in this case the third-party beneficiary, had a copy of the actual policy, then the terms of the policy would be imputed to the insured. We never got a copy of the policy. But you got a copy of the – you knew what the coverage was. But there's a very important provision that relates to this coverage, Your Honor. It's called the coinsurance clause. For example, just because there's a number listed on the policy of $5 million doesn't mean that the company is going to pay a 100% partial loss. And this policy actually has a coinsurance provision, an 80% coinsurance provision. And that's in the record at page 1934. You'll see that the coinsurance box is checked. And at page 1881 of the record, when you look into the contract, it tells the insured, in this case the mortgagee owner of the property, how the coinsurance provision would work. And the way that works is if the property is not insured up to 80% of value, then 100% of a partial loss would not be paid. And in this case, it was not insured up to 80% of value. It was insured up to – Let me help. Help me understand. Certainly. How would the coinsurance clause get you more than $5 million of coverage? It's not that the coinsurance clause would get us more than $4 million, $5 million in coverage, Your Honor. It would signal to my client that there was a coinsurance provision in this policy and that he may very well need to look to the insured to purchase more coverage. Well, I mean, my point is the most you could get by looking at the face of what your client had was $5 million of coverage. The coinsurance clause didn't get you above $5 million. So how did – I don't understand how that helps you. It helps us because it signals to the insured. Actually, Your Honor, if the coinsurance clause would have been applied to this partial loss, my client would not have gotten $5 million in coverage. Because he was only insured to 41% of value. And I'll tell you that's significant because when you look at the Altera emails, Altera knew that. Altera knew that they could have applied the coinsurance provision and paid less than $5 million. But in order to do that, they would have had to take the position that the property was insured at the wrong replacement cost value, was insured less than 100%, and in this case less than 80% of value. That's how it helps. And under that case, and on the specific loans of the Mladenayo case, it specifically says you've got to have a copy of the policy. And that's why, because there are policy provisions that are not in the Certificate of Insurance. Now, that's Mississippi law. Well, I'm just – that's what provision in the policy would have made the – had Emeril had the policy, it could think, well, I know it says $5 million here, but I'm sure somewhere in that policy I'm covered for $15. I don't have to worry that the certificate says only $5. No, what it would have signaled to the insured is I'm not covered for full value of a partial loss. I think that's – we may be talking around each other, Your Honor, and I apologize for that. But it signals to the insured, I'm not covered for a partial loss. Your thought process is suggesting if it was a total loss, $5 million would be paid. That's correct. But what that coinsurance provision, the policy signals to the insured is I'm not insured for partial loss to 100% of value. And this was a partial loss. It was not a complete loss. The total value. But it would signal that I'm not insured anywhere near $15 million. That's my only point. And I do understand that. And the best way I can answer it is we didn't get a copy of the policy. That's what Maladenao requires, a copy of the policy, not the certificate under Mississippi law. Under Florida law, it's a comparative false statute. So there is no way that the court could have granted summary judgment under Florida law based on receiving the certificate because it's a comparative – it's an issue of comparative negligence. Your Honor, the court decided the case, as I said, based upon a legal duty arising from a contract. As part of the court's decision, the court specifically found that plaintiff had neither pleaded nor argued that it was a third-party beneficiary of any contract to procure insurance. That's part of the court's order in the record at page 4390. With all due respect to the court, that statement is incorrect. In our response to the motion for summary judgment filed by Bank Corp South, Emerald Coast specifically pled that Sunrise and Bank Corp South entered into an agreement to obtain replacement cost insurance for the benefit of Emerald Coast. That's in the record at 347. So we did argue third-party beneficiary of an underlying contract to obtain replacement cost insurance or a contract to procure, as the court calls it. At page 349 of our response, Emerald Coast pled the undisputed facts confirmed that Sunrise and Bank Corp South knew they were entering into an insurance agreement for Emerald Coast benefit to obtain replacement cost coverage. So to the extent that the court's error in result was based upon that error in reasoning, that error in reasoning, that error by the court is not supported by the record. Your Honor, I briefly mentioned that there is a conflict in law in this case. It involves whether Florida or Mississippi law would apply. And we've cited the Florida case of Daniel v. Florida Residential to the court. In that case, the Florida court specifically found that a duty to a third party could arise as a result of the undertaking and did not necessarily have to arise from contract. And that's where the court committed error. There's no counterpart to Daniel in Mississippi law. The general principles are there, but there's no counterpart to Daniel finding that the duty could arise from the undertaking to the third party in a negligence case. And that's what our claim is. Based on their undertaking to conduct an investigation into the physical characteristics of this building, they placed the wrong coverage. And emails from Altera obtained during discovery confirmed that they used the wrong formula to evaluate this building. They placed coverage based upon a cinder block building and not a 126,000 square foot refrigerated building. And that Daniel is consistent with general principles of Florida law finding that where an insurance defendant undertakes to obtain coverage, then they can be liable in breach of contract or negligence. And that's the Romo case and then the Warehouse Food case. Negligent failure to obtain coverage based upon express needs claim can rise under negligence. Your Honor, I want to talk to you a little bit about the court's decision to the extent that it was based upon Florida law. The court cited the Rehan v. Wilson case that the court believed held that Emerald Coast had to plead in its complaint that they were a beneficiary of an underlying third party contract to procure. And that case, Your Honor, was decided by the Florida court based upon the failure of the plaintiff to follow the instructions of the court to file an amended complaint. When they did not file the amended complaint to plead these facts, the case was dismissed. You cannot reconcile Rehan with Daniel unless you understand that Rehan was based upon a pleading deficiency. And we've cited to court the case of Ashcroft v. Iqbal. Your Honors are very familiar with that case, indicating that if it's a pleading deficiency, then what should happen is the case should be remanded for that pleading deficiency to be corrected. One case that is not cited is Flagg v. Stryker, which is not in the briefs. I'm sure all of Your Honors are familiar with that case. And that is the plausibility case that was decided by the Fifth Circuit, Flagg v. Stryker. Flagg holds that if the plaintiff has plausibly alleged enough information that with discovery could prove his case, then there is no pleading deficiency. And I would ask the court to look into the complaint at counts three and four, and you'll see the first two sentences of those counts indicate that we plausibly pled a claim of third-party beneficiary to an underlying contract when we alleged that Bancorp South and Alterra both knew they were purchasing insurance for our benefit and both knew that they were being requested to purchase 100% replacement cost coverage. To the extent that the court decided the case upon Mississippi law, it erred because it relied on principles of contract law and not negligence law. The court relied on the case of Bird v. Principal Insurance, which cites Westmoreland v. Raper for the finding that plaintiffs had to be a party to an underlying contract to procure before they could bring a claim under Mississippi law. First, with all due respect to the district court, the Westmoreland case has been overruled specifically and although there are principles that carry forward in that case, the primary principle that Westmoreland was based on is that third parties cannot violate direct action against an insurance company. And that principle of law was overruled in 2003. Overruled to the extent of saying a declaratory judgment could be obtained? That's correct. Which is distinguishable from what we're dealing with here. Absolutely, Your Honor, but if you look at the way that the court built its ruling, it was built initially upon that principle. Like I said, there are principles in the case that do carry forward. Well, but it hasn't led to cases like yours. There's no other case you're citing from Mississippi where someone in your position has been allowed to have a direct action against an insurance company, which is at least suggestive of something. And, Your Honor, that is the conflict. That's why I believe the court has to go back into Florida law under Section 145 of the Restatement of Conflicts that applies to torts. Are there Mississippi cases that deal with a situation where a named insured and you're named in the Lost Payable Clause, they can't sue directly under the insurance policy to get the proceeds? No, there's not that. And we're not a named insured under the Lost Payable Clause. And I do not have any of those cases. The other issue that was raised with the courts. Well, let me ask you this in following up to that. Byrd is a very distinguishable case, but the law may be the same, even though you can factually distinguish it. But an uninsured motorist and how they may fit in and whether you get policy. You are in the policy. Not as a named insured, but you are recognized in the policy. We're recognized as a mortgagee in the policy, and I know that's the direction and that's the path that I wanted to take the court down so that we have rights under the policy to make a claim for negligence for failure to procure, but I could not find a case under either Mississippi. And I think that's one of the problems. With all fairness to the district court, that's one of the problems with regard to this tangled issue that we have because so many cases were decided based upon contract law. And so many cases were, for example, the court cites the Ryan v. Benchmark construction case and Altair and Bank Corp South bring that case into their briefs as their primary authority. That's a breached contract claim. And I think the fact that the court conflated these issues is consistent with the way other courts have conflated these issues to answer Justice Southwick's question. And to untangle the issue before the court, you've got to rely specifically upon cases, negligence cases, and to further answer your question, the answer is no. There's not a magic bullet. You've got to apply general principles of negligence law under Mississippi, but we believe the court can be decided specifically under the Daniel case under Florida law. Thank you. May it please the Court, I'm Jimmy Heidelberg from Pascagoula, Mississippi. It's my privilege to represent Bank Corp South today before the court. We believe the trial court was eminently correct in both its grant of summary judgment and its denial of the motion to reconsider. What's important in this case is the party that is not here, Sunrise, was the insured in this case. My client is an insurance agent who received a request from its insured to place $5 million on a structure. They did so. They listed as an additional interest Emerald Coast. We had no communication with them, but we did what our insured told us to do. They confirmed that amount. On page 2343 of the record, the corporate representative says, we never asked for any other amount than that. After the loss occurred, Emerald Coast, because of their being an additional interest, received the $5 million policy limit. Any issue regarding receipt of the policy is irrelevant for several reasons. First of all, they received the evidence of insurance coverage. At first, of course, they denied that. But when we took the deposition of Ms. Thompson, she said not only did she receive it, she still had it and the envelope it came in, which she got four days after the lease agreement was entered into and the lease purchase agreement was enacted. Now, one thing I want to remind the court of that it made loss over. My client was never a party to the lease between Sunrise and Emerald Coast. We did not receive a copy of that lease until after the fire, so it made no difference one way or the other. We were requested to place a certain amount of insurance. We did so. Is the evidence clear, Mr. Hardwick, that you were not told this is meant to be total replacement? That's what I think it is. We followed the instruction. They said they wanted $5 million worth of insurance. I'm not trying to change your statement, but I'm just asking, is there evidence that your people were told that that's supposed to represent total replacement? We're not quite sure how much that would be. They were told it was replacement cost because the evidence of insurance not only mentions the figure $5 million, but it does say replacement cost. Yes, sir. That is the same document that Emerald Coast received that says $5 million replacement cost. Those were on that figure. That amount and that description is listed on the evidence of insurance coverage that they both received. What's your best case that says conflicts of law analysis? It should be Mississippi, not Florida. Well, first of all, the cases we've cited clearly show that. But remember, this is the claim, as I understand it, from the plaintiff. I don't know what a general negligence claim is. You've got to be negligent in something. The claim that they make is negligent procurement. Well, this policy was procured in Mississippi by a Mississippi insured requesting a Mississippi agent to place insurance. So under any choice of law analysis, Mississippi law would apply. But I believe Judge Sterik, in his analysis on the motion to reconsider, made it extremely clear there's no difference anyway. The choice of law issue is moot and irrelevant in this case because as to the issue of procurement of a policy and any duty. Well, they said it made an issue with regard to, I can't pronounce the Mississippi case, it starts with an M, that says if you get a copy of the policy that reflects the limits, you know. Yes, sir. You can't make a claim. They say Florida law applies. It's comparative negligence. That is incorrect. And the court said in its motion to reconsider there's no case law that was cited nor that the court confined. And it doesn't make any difference. I think what Judge Sterik clearly held is the analysis of law, the choice of law question, is irrelevant because the law is the same as it relates to a negligent procurement issue, whether it's brought in Florida or whether it's brought in Mississippi, are under that law. Of course, the lease agreement that the plaintiff tries to travel on has a choice of law provision that says Mississippi will be the forum and that will be the law that is afforded. What I think at first blush the court needs to keep in mind when it reads these briefs and understands the situation is that Emerald Coast swaps back and forth between its position and what Sunrise's position is, the insured. Emerald Coast can't get any additional rights or relief that Sunrise could have received. Sunrise didn't make a claim in this lawsuit against us that we negligently procured anything for them. Their corporate representative in the deposition, I believe I mentioned that, page 2353 of the record, I asked, did anyone from Sunrise ever request a higher value of insurance to be placed on that building before the fire? And Mr. Gray says, not to my knowledge. The reason is we did exactly what our insured asked us to do, to place $5 million in replacement costs on the building. When the loss occurred three months later, after which both the insured, Sunrise, and the additional interest, Emerald Coast, had possession of the evidence of insurance that said exactly what they had. Ms. Thompson says when we deposed her, the co-owner of the building, yeah, I got it. I know what it said. I wasn't worried about that because we were, quote, double covered. They meant, in the context of her testimony, was Sunrise entered into a lease with us and was going to protect us. So there's no issue as to what the parties knew as to the value and what it was for. Receiving a policy in this case, first of all, is a red herring. It adds nothing to the case at all. What they received, we're talking about value, not any policy provisions. Value of replacement costs. They received that. They got it. By the way, in the lease itself, on page 239, I believe, Emerald Coast had the right and the obligation under the release to receive a copy of the policy from Sunrise, not us, so they could determine, and the language is, that it is reasonably suitable. So they didn't take advantage of that. I think it's very clear in this case. The record shows that when Sunrise, when Emerald Coast owned the property, they didn't insure it for $15 million. They insured it for an amount very close to that. One issue that, in the claims that began this matter, was Emerald Coast asserted some duty that doesn't apply in Mississippi, Florida, anywhere in the insurance vernacular. An insurance agent does not have a duty to go out and appraise someone's property when they come in and ask for insurance. In a very simple term, we're order takers. Mississippi law is very clear. The cases we've cited show Florida, Mississippi, everywhere, and insured is presumed to be more knowledgeable about his own property and what he was doing. Also, the context of this case shows what Sunrise did and why it was reasonable. This was a lease purchase agreement, and Emerald Coast was going to sell this property, lock, stock, and barrel, for $4.6 million. So it was reasonable, linking back in Sunrise's mind, that they wanted $5 million in coverage. I would assume that when the owners, Emerald Coast, received that evidence of insurance, showing it was insured for a $5 million replacement cost, that appeared reasonable to them. At least it is uncontested they did nothing at any time before the fire to say, I've got inadequate coverage. They would have talked to Sunrise, not us, because they were strangers to us, other than being listed at the request of Sunrise as an additional interest. So we're in a position where the judge was correct. No matter whether you want to construe this claim under Florida law, under Mississippi law, there is no duty or obligation that we had to Emerald Coast to do what they claim in this lawsuit. We also believe that the court needs to take into consideration the request Your time is up. I'm sorry. I'm sure we'll take that into consideration. Thank you. May it please the Court, I'm Mark Morrison and I represent Altera America. At the risk of oversimplifying things, Your Honor, our position is and has always been, and this is the basis upon which Judge Sterik granted summary judgment, is that regardless of whether we deem Emerald a third-party beneficiary, regardless of whether we call them an additional interest or a mortgagee, or whether we look at these issues under Mississippi or Florida law, the fact remains that Emerald cannot obtain rights under this coverage greater than those enjoyed by the name-insured Sunrise. And Judge Owen, you addressed some of that in some of your questions of Mr. Welsh a few moments ago when we kind of got talking about the mortgagee references in the terms and conditions of the policy in the context of the Maldonado case. Our contention has always been that when we finally got Ms. Thompson to admit under oath in a deposition that she received that certificate of insurance, that they had pre-loss notice of the amount of coverage. And as Mr. Halliburton referenced, there was a contract, a lease purchase agreement, between Sunrise, our insured, and Mr. Welsh's clients, the plaintiff in this case, to procure insurance. And so when they opened that envelope and they saw that there was insurance coverage under a policy purchased by Sunrise consistent with the lease purchase obligations, and it was for $5 million based upon an agreed-upon sale price of 4.6, they never called anybody. They didn't pick up the phone and call anybody at Sunrise and say, hey, look, this isn't what we agreed to, fellas. They never picked up the phone and called Mr. Halliburton's clients, the agent, and said, hey, look, we got this from you in the mail today, and it's insufficient insurance coverage. And there's a reason why, because they obtained insurance coverage in the amount of $5 million as requested, and they were given evidence of it. And Ms. Thompson's response was, we felt like we were double-covered, as Mr. Halliburton referenced, because she thought we got enough insurance coverage to cover the purchase price of $4.6 million. And by the way, we have this contractual provision in the lease purchase agreement that obligates Sunrise to build our warehouse back, suitable to us. And so that's always been our position in this case, and I think it resonated with Judge Sterrett. And for that reason, he got the right result, is that regardless, even if we give Emerald the benefit of the doubt, because they failed, with all due respect, at three different occasions to prove a true conflict of law so as to warrant a determination as to whether Mississippi or Florida law applies, but to hedge his bet, Judge Sterrett analyzed the duty under both Mississippi law, because we don't have cases on all four points, under Mississippi or Florida law, but what we do have, in the Daniel case that Mr. Wells referenced a moment ago, as his Florida decision to show that Florida law is different or conflicts with Mississippi law, the problem with Daniel is it doesn't get any closer to my client, Altera. Daniel, as a representative of Florida law, is very much like all the Mississippi cases that we've all collectively cited in our briefs and Judge Sterrett addressed in his opinions. The law says that there is a duty to procure on the part of an insurance agent such as Bank Corp. South, but it's to procure the requested coverage in the amount and type requested. In this case, that happened, and they can spend it however they want. Those email exchanges between Mr. Carter and Sunrise, they said, we're getting ready to close in two weeks on a warehouse in Pensacola, Florida. We estimate the value to be $5 million. Get us a quote for the cost, and that's undisputed. It's in the record, Your Honor, that they asked for, they said, it's a $5 million building. Tell us how much it's going to cost us to get that endorsement. We run it up the chain. We get an endorsement to an existing policy, and I'm not going to go back through what we just said a moment ago, but they got evidence of it. It wasn't until three months later when the fire occurred that anybody said anything about the amount of coverage that was placed, and so that's the fatal flaw in the argument and has been the fatal flaw since the time this case was filed is that you never enjoy, under Mississippi, Florida law, or that, with all due respect, or Timbuktu, greater rights to coverage as a third-party beneficiary than the named insurer themselves enjoy. And Sunrise never, to this day, filed a claim against Altera, Bancorp South, the broker in between. They were never named as a party and never made a claim, cross-claim or otherwise. And so unless Your Honors have any particular questions of me, that's about as plain as I can say why it is that I believe that this Court should affirm Judge Sterik's correct granting of summary judgment in favor of both Bancorp South and Altera. Thank you. Please, the Court. I feel like I'm arguing a fact-based motion for summary judgment as opposed to a summary judgment motion based upon the law. The only issue decided by this Court is legal duty. Whether or not, based upon this record, Bancorp South procured the requested coverage is not before the Court, and is, in fact, a highly contested issue. If the Court will look into our reply brief at page 2 through 4. We get that. I understand. The issue regarding the rights, and just a small matter, we never denied getting a certificate of insurance. We just never admitted getting it until we could find it, and that's when our client testified at the deposition that she received the certificate. Never denied it. We just refused to admit it because we had a fire. We couldn't find our records. The fact that Bancorp South never made a claim is of no moment. In all the cases that have been cited to the Court regarding third-party beneficiaries bringing claims, there's no indication that the underlying insured was sitting there at table with the third-party beneficiary actually suing the agent or suing the insurance company. The fact that Bancorp South didn't bring a claim may be based on the fact that they had a 20-year that Sunrise didn't bring a claim. I apologize. Sunrise didn't bring a claim is a red herring. The fact that Sunrise didn't bring a claim against Bancorp South may have been based on the fact they had a 20-year relationship with the Bancorp South representative. It may have been a fact that the Sunrise president didn't want to meet the Bancorp South president at a cocktail party and have to discuss this. That is a red herring and is completely irrelevant. Your Honor asked a question about the restatement second of the conflict of law issue regarding Florida law. Under Section 145 of the Restatement Second of Conflicts, Williams v. Liberty Mutual found that the Mississippi adopted Section 145. Williams v. Liberty Mutual is a 2014 Fifth Circuit case. And it lays out the factors for choice of law. Place of injury. Place of injury in this case was Florida. Conduct causing the injury. Florida, where the claims of general negligence for failure to properly inspect occurred. The domicile of the parties. Don't forget that the name insured under the policy was Sunrise Florida LLC, a Florida LLC that had to be created in order to have this business. It's just a company in name only. But it was a Florida company that was a name insured under the policy. I know that one of the last errors here is that Judge Sterritt didn't do a choice of law, but what do you say to the fact that the lease itself says Mississippi law? That lease, if the court will look at the choice of law provision, it specifically says that the lease shall be governed by Mississippi law. Bancorp South and Altera are not parties to the lease agreement. They are not third-party beneficiaries to the lease agreement. The lease agreement was not entered into on their behalf. Under no rational application of Mississippi or Florida law could Altera or Bancorp South look into the provisions of this lease agreement and take advantage of the Mississippi law provision. I did not cite the Florida case to the court. The fact that Emerald Coast never received a copy of the insurance policy, it's a question of comparative negligence under Florida law. It's Miles v. AAA Insurance. And, Your Honor, just to sum up and close our position, under the Mladenayo v. Schmidt case, the Mississippi case, under the Warehouse Foods case, both of those cases say that there is no affirmative duty on behalf of an insured defendant to advise about coverage or to take any position regarding coverage. But once they do, then they have an affirmative duty to use reasonable care, and that's what we're talking about. Altera and Bancorp South may not have had an obligation to look at our business, to look at our warehouse, and determine 100% replacement cost value, but they did. And, in fact, Altera's own emails speak to this and say we used the wrong formula. Altera's report obtained after the fire by a company called Remkes, using the proper formula, the Marshall-Swift valuation formula, showed that the proper replacement cost value for a 126,000-square-foot refrigerated warehouse was $15 million. And that's what this case is about. It's about what they didn't do when they agreed to undertake the duty to evaluate what replacement cost value was. One other small matter, Your Honor. The fact that we may or may not have complained about insurance coverage, that's going to be a fact-based question. The lease was in January. The fire was in April. The court cannot decide the issue of legal duty based upon whether or not we did or didn't complain about insurance coverage timely. No questions, Your Honor. Thank you. The court will take a brief recess.